# IN THE OREGON TAX COURT
## REGULAR DIVISION

Lowell E. PATTON,
*Plaintiff,*

*v.*

## DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4621)

Joseph Wetzel, Wetzel DeFrang & Sandor, Portland, argued the cause for Plaintiff (taxpayer).

Marilyn Harbur, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision for Defendant rendered October 14, 2004. Motions for Reconsideration decided April 21, 2005. *See Patton II v. Dept. of Rev.*, 18 OTR 256 (2005).

## HENRY C. BREITHAUPT, Judge.

### I. INTRODUCTION

This matter comes before the court on a motion for summary judgment filed by Defendant (the department). Plaintiff (taxpayer) objected to the department's motion, asserting that material issues of fact are present in the case that prevent summary judgment. Taxpayer has also advanced legal arguments in opposition to those of the department. The tax years at issue are 1998 and 1999.

### II. FACTS

Either through uncontroverted assertions made by the department or taxpayer or matters stipulated before or at the hearing on this case,[1] the following material facts have been established. In the summer of 1998, taxpayer purchased forestland in Clackamas County. During 1998 and 1999 and within five years of the purchase, taxpayer harvested the

---

[1] In support of its motion for summary judgment the department submitted a number of exhibits. Most of the exhibits were not identified by affidavit, related to any pleadings, depositions, or admissions, or otherwise sworn or certified. Accordingly, the court has not relied on any such exhibits in determining if summary judgment is appropriate or available in favor of the department. *Cf. Demaray v. Dept. of Environmental Quality*, 127 Or App 494, 497, 873 P2d 403, *rev den*, 319 Or 625 (1994).

timber in question from the property. Taxpayer did not apply to have the forestland in question certified as forestland, and the forestland was not certified, under the Western Oregon Small Tract Optional Tax (WOSTOT), codified as ORS 321.705 to 321.765.[2]

For the 1998 year, apparently believing that the forestland from which harvest occurred was subject to WOSTOT, taxpayer did not pay taxes on harvested timber under the Western Oregon Forestland and Privilege Tax (WOFPT)[3] or the Forest Products Harvest Tax (FPHT).[4] The department issued notices of deficiency for the 1998 year under WOFPT. Thereafter, on February 27, 2001, the department issued notices of assessment for WOFPT and FPHT for 1998. On October 17, 2001, the department garnished accounts of taxpayer for approximately $39,515.[5] On or about October 30, 2001, taxpayer filed a complaint in this court challenging the actions of the department for 1998.[6]

Taxpayer did not file WOFPT and FPHT returns in respect of 1999 harvests and on November 6, 2001, and February 6, 2002, the department issued Notices of Determination and Assessment (NODAs). Taxpayer timely appealed the November 6, 2001, NODA.[7]

Finally, on November 20, 2003, two state employees entered onto the subject property in order to gather information for the department.

### III. ISSUES

A. For the 1998 tax year, was taxpayer's complaint filed on or about October 30, 2001, time barred?

---

[2] All references to Oregon Revised Statutes (ORS) are to the 1997 edition, unless otherwise noted. Major statutory changes have occurred in ORS chapter 321 following the 1997 edition.

[3] ORS 321.257 to 321.381.

[4] ORS 321.005 to 321.185.

[5] That is the amount in taxpayer's Complaint and Plaintiff's Supplemental Memorandum in Response to Defendant's Reply with Respect to Defendant's Motion for Summary Judgment. In Plaintiff's Declaration, taxpayer asserts that the department seized $49,339.29.

[6] Apparently no dispute exists regarding taxpayer's liability for FPHT.

[7] The record is not clear as to what occurred with respect to the NODA issued in 2002.

B. For the 1999 tax year, was timber harvested in 1999 by taxpayer subject to WOSTOT and, therefore, exempt from WOFPT?

C. Under ORS 305.145, may the court waive penalties imposed by the department?

D. Should the court strike one affidavit and two exhibits offered by the department, which were the product of the November 20, 2003, search of the subject property?

E. May the department recover attorney fees?

## IV. ANALYSIS

A. *1998 Tax Year*

■ Taxpayer did not file an appeal of the department's notice of assessment within the 90-day period stated in ORS 305.280(2). Taxpayer urges the court to find that he substantially complied with the requirement of the law and that the state was not prejudiced by the late filing. Taxpayer describes the imposition of the statutory time bar as "harsh formalism." Taxpayer's arguments are directly inconsistent with the statutes and the prior holdings of the Oregon Supreme Court and of this court. The time limits are statutory and this court cannot relieve any taxpayer or the government from their effect based on notions of substantial compliance or lack of prejudice. *Olympia Brewing Co. v. Dept. of Rev.*, 284 Or 669, 673 n 2, 588 P2d 30 (1978) (the court does "not consider prejudice or lack thereof a relevant factor when there has been failure to comply with a statute of limitations"). *See also Arnold v. Dept. of Rev.*, 12 OTR 69, 71-72 (1991); *Multnomah County v. Dept. of Rev.*, 13 OTR 422, 425 (1995), *aff'd*, 325 Or 230, 935 P2d 426 (1997).

That said, at the request of the court, and independent of any claim made by the taxpayer, the parties filed supplemental writings addressing whether ORS 305.280(3)[8] or

---

[8] ORS 305.280(3) provides:

"Notwithstanding subsection (2) of this section, an appeal from a notice of assessment of taxes imposed under ORS chapter 314, 316, 317 or 318 may be filed within two years after the date the amount of tax, as shown on the notice and including appropriate penalties and interest, is paid."

the statutes on refund claims, ORS 305.270,[9] might have provided taxpayer with an opportunity to raise his concerns within two years of the time his 1998 tax was paid. That payment could be viewed as having occurred on October 17, 2001, when the department garnished bank accounts of taxpayer. Taxpayer's appeal to this court came within two years of the garnishment.

■ The department asserts that garnishment is collection rather than "payment" for purposes of the analysis of ORS 305.280 and ORS 305.270, and, therefore, no extended appeal or refund period exists. That argument ignores the statutory provisions of ORS 321.570(1), which authorizes the department to issue warrants directing seizure and sale of property "for the *payment* of the amount of the tax * * *." (Emphasis added.) ORS 314.430(1) contains identical language as to other taxes. The court concludes that the provisions of ORS 305.270 and ORS 305.280, which provide for taxpayer action within two years of payment, are to be applied in the case of garnishment by treating the date of successful garnishment as the date of payment.

In his supplemental submissions, taxpayer seeks the benefit of either ORS 305.280(3) or ORS 305.270. ORS 305.280(3) provides for an extended appeal period in certain cases following payment of tax. By its terms ORS 305.280(3) applies only in the case of taxes "imposed under ORS chapter 314, 316, 317 or 318." The tax in question here is imposed under ORS chapter 321. Taxpayer points, however, to ORS 321.560(1)(a), which provides:

"The provisions of ORS chapters 305 and 314 as to the audit and examination of reports and returns, determination of deficiencies, liens, assessments, claims for refund, conferences and appeals to the Oregon Tax Court, and the procedures relating thereto, shall apply to the determination of taxes, penalties and interest imposed under ORS 321.005 to

---

ORS 305.280 was amended to read as quoted. Or Laws 1999, ch 249, § 2. The legislature made that legislation applicable to payments of tax made on or after the effective date of the Act, which was October 23, 1999. Payment in this case occurred, if at all, after October 23, 1999.

[9] ORS 305.270(2) provides, in part: "The claim shall be filed * * * within two years of the payment of any tax under ORS chapter 308 or 321."

321.185, 321.257 to 321.381, 321.405 to 321.520 or 321.560 to 321.600, except where the context requires otherwise."

Taxpayer argues that because ORS 321.560(1)(a) refers to both ORS chapters 305 and 314, and because ORS chapter 305 contains ORS 305.280(3), which itself refers to ORS chapter 314, the provisions of ORS 305.280(3) should be applied in the case of timber taxes imposed under chapter 321.

The department, however, points out that ORS 321.560 contains a proviso which limits its incorporation of ORS chapters 305 and 314 "where the context requires otherwise." The department argues that the specific provisions of ORS 305.280(3), referring only to chapters 314, 316, 317, and 318, in fact "provide otherwise."

■ ■ The court agrees with the department. Whatever general incorporation of ORS chapter 305 is contained in ORS 321.560, ORS 305.280(3) "provides otherwise" when it limits its application to certain taxes. Further, the legislative history of ORS 305.280(3) indicates that the legislature was told that its provisions applied only to income taxes.[10] Accordingly, ORS 305.280(3) does not provide an extension of the time within which taxpayer was required to appeal from the notice of assessment of timber tax for 1998.

Taxpayer next argues that even if an extended appeal period is not available, the court should apply the refund claim provisions of ORS 305.270. Taxpayer further argues that his complaint in this court should be treated as the claim for refund that ORS 305.270 requires to be filed with the department. In taxpayer's words, referring to both ORS 305.280(3) and ORS 305.270, "there are two separate, and independent bases, [*sic*] for allowing a two-year period for a claim for refund * * *."

Early in the life of this court, it was settled that Oregon procedure on income tax disputes differed in at least one fundamental respect from the federal system: appeals

---

[10] Testimony, House Committee on Revenue, HB 2762, Apr 14, 1999, Ex 2 (testimony of Scot Sideras). ORS chapters 314 to 318 deal with income tax, with some procedural rules also found in chapter 314.

from department action and refund procedures were independent and mutually exclusive remedies. *Utgard v. Dept. of Rev.*, 1 OTR 274, 281-82 (1963), *aff'd*, 236 Or 596, 390 P2d 182 (1964). In *Utgard*, this court looked at the statutory scheme for appeals and refund claims and language which was contradictory but had to be reconciled. This court concluded that when the department initiated a claim for additional tax, the appeal process became the sole avenue for the proceeding. *Id.* at 281. When a taxpayer initiated matters through a claim for refund, however, refund procedures, and only those procedures, were applicable. *Id.* at 281-82. The court concluded that under the governing statutory language, when the department initiated matters through an assessment, if a taxpayer neglected to make a timely appeal from the assessment, the assessment became final and payment of the tax did not revive, create, or continue any right of a taxpayer to further appeal or claim a refund. *Id.* at 282.

The court in *Utgard* was construing statutes that have been renumbered but otherwise continued in force,[11] with one important exception. That exception is the action of the legislature in 1999 in adding the appeal extension provision in ORS 305.280(3) to the statutes, an action that was accompanied by a collateral amendment to ORS 305.265(14). *See* Or Laws 1999, ch 249, § 1.[12]

■ It is important to consider the amendment to ORS 305.265(14) because it was the language of that section on

---

[11] The court in *Utgard* was construing the meaning of ORS 314.455. In 1977, the legislature repealed ORS 314.455 and enacted, among other provisions, ORS 305.265, ORS 305.280, and ORS 314.466. Or Laws 1977, ch 870, Preface, §§ 3, 6, 22-23. Those changes do not affect this appeal.

[12] Or Laws 1999, ch 249, § 1 amended ORS 305.265(14) as follows, with bracketed text to be deleted and boldface text to be added:

"If the deficiency is paid in full before a notice of assessment is issued, the department is not required to send a notice of assessment, and the tax shall be considered as assessed as of the date which is 30 days from the date of the notice of deficiency or the date the deficiency is paid, whichever is the later. A partial payment of the deficiency shall constitute only a credit to the account of the person assessed. Assessments and billings of taxes shall be final after the expiration of the appeal period specified in ORS 305.280, [*and payment of the tax shall not give any person any extension of the period within which an appeal may be taken*] **except to the extent that an appeal is allowed under ORS 305.280(3) following payment of the tax**."

finality of assessments that was the basis of the court's decision in *Utgard* reconciling the statutory schemes for assessment and refund. The court in *Utgard* noted that when assessments were not appealed in timely fashion the statutes made them "final" and the period for contest was not extended by payment of the tax and claim from refund. The 1999 Legislative Assembly continued the rule that a failure to appeal within the appeal period in ORS 305.280, in a case commenced by an assessment, rendered the assessment "final." The legislature provided an exception for those appeals that were described in ORS 305.280(3). The 1999 Legislative Assembly, however, did not alter the statutory landscape in a way that rendered *Utgard* otherwise inoperative. *Utgard* remains a correct explanation of the Oregon procedural landscape for matters governed by ORS 305.265, with the only exception being for income tax assessments. In such cases, ORS 305.280(3) provides that, if an appeal deadline is missed, the appeal period is nonetheless extended for two years following payment of the tax.

■ In the case of other tax appeals governed by ORS 305.265, including timber taxes imposed under ORS chapter 321, however, the *Utgard* explanation remains the law.[13] If the department issues an assessment before a claim for refund is made, "the legal battle must be fought out" under the procedures for assessment and appeal. *Utgard*, 1 OTR at 282. If a taxpayer fails to comply with the time requirements of the assessment and appeal procedures, the assessment becomes final, just as the assessment in *Utgard* became final when a timely appeal was not filed. The finality of an unappealed timber tax assessment is not overcome by payment of tax and a claim for refund. The court concludes, therefore, that taxpayer's complaint in this court, as to the 1998 tax year, was time barred.[14]

---

[13] ORS 305.265 applies to timber tax matters by reason of the cross reference in ORS 321.560, discussed above, and because ORS 305.265(1) itself states that it is applicable to "all reports or returns of tax * * * filed with the Department of Revenue under the revenue and tax laws administered by it * * *." Here the matters in question arose as a result of a report as to tax administered by the department.

[14] Taxpayer attached the Notice of Garnishment as the copy of the action appealed to the complaint he filed in the Magistrate Division. The logic of *Utgard* prevents this court from considering the garnishment itself as being a separate

B. *1999 Tax Year*

■■ If forestland is in the WOSTOT program, WOFPT is not due. ORS 321.267(1)(b). Taxpayer defends against the assessment of WOFPT on that basis. Taxpayer stipulated at the hearing on this matter, however, that he did not apply for, or obtain, a certification from the State Forester that the forestland from which the 1999 harvest occurred was qualified under WOSTOT program. Given that fact, the harvest activity from such land cannot be exempt from the WOFPT by reason of the land being in the WOSTOT program. The statutory provisions are unequivocal: certification of WOSTOT status after application for the certification is what makes some forestland subject to the WOSTOT program and likewise exempt from WOFPT.

■ The importance of the WOSTOT application by the landowner and the action of the State Forester in response to that application are reflected in the statutes. WOSTOT status is not a matter of objective fact existing independently of taxpayer and state action. WOSTOT status is, instead, something that occurs after application. Indeed, WOSTOT status is optional, something an owner "may elect." ORS 321.725(1). Although an owner "may apply" for WOSTOT certification under ORS 321.730(1), the owner is not required to do so.[15] The owner of forestland has a choice about WOSTOT classification, but the statutes indicate the coice must be expressed by action that the taxpayer here failed to take.

■ The importance of the application for classification is also reflected in ORS 321.765. That statute gives a landowner a right to appeal an adverse decision of the State Forester on a classification application to the State Board of

---

action of the department from which appeal may be taken under ORS 305.275. In addition, ORS 305.275 is unavailable by its terms because taxpayer had, as to the basic dispute, another statutory right of appeal. Taxpayer's failure to correctly pursue that route of appeal (from the notice of assessment) does not create a right to appeal an act of collection.

 [15] ORS 321.725(3) does require inclusion of all eligible lands within any single tax lot; however, there is no general requirement that all lands owned be made subject to a WOSTOT application.

Forestry and then on to this court. Those procedural provisions reflect the fact that under the statutes the classification decision is made before harvest and most doubts as to WOSTOT status are to be resolved before harvest.[16] The statutes provide a specific role for forestry officials in that process. A taxpayer may not bypass the application and certification process and seek to have this court be the first place that qualification for WOSTOT is tested.[17] Taxpayer makes a number of arguments regarding the qualification of the timber in question for WOSTOT status. Those should have been made to the State Forester, in the first instance, if they were relevant.[18]

■ Taxpayer argues, however, that he understood from forestry officials that no WOSTOT application was necessary because he had made one such application in the past for other property. Taxpayer argues that this should excuse his failure to apply for certification for the property in question. To the extent that this is in the nature of an estoppel claim it fails for two reasons. First, the law is clear that the acts of one agency—here the Department of Forestry—cannot estop another agency—here the department. *Davidson v. Oregon Government Ethics Comm.*, 300 Or 415, 423, 712 P2d 87 (1985). *See also Murphy Sales Co. v. Dept. of Rev.*, 12 OTR 448, 453 (1993), *aff'd*, 319 Or 1, 871 P2d 1013 (1994) (specifically dealing with representations of the Department of Forestry sought to be applied against the department).

---

[16] ORS 321.747 provides that timber harvested within five years from the classification of lands as WOSTOT is subject to the WOFPT. WOSTOT status must generally be determined before harvest. It appears that the only fact that can defeat WOSTOT status after classification would be harvest before expiration of the five-year period.

[17] Effective September 1, 1997, the requirement that a taxpayer exhaust administrative remedies prior to coming to this court was repealed. *See* Or Laws 1995, ch 650, § 7. The conclusion of the court about the necessity of a taxpayer obtaining a certificate of WOSTOT is not a matter of exhaustion of administrative remedies. It is rather the enforcement of a legislative requirement that a condition to a tax benefit or status be satisfied through action of another agency of the state. The practice of making tax benefits contingent on the receipt of approval or certification of an agency other than the department is not unusual. *See* ORS 315.304 (relating to pollution control tax credits for facilities certified under ORS 468.170).

[18] For example, some dispute may exist regarding the age of the timber in question, a fact as to which the State Forester obviously has more expertise than this court. The court notes that even if the timber age was as asserted by taxpayer, he would still not prevail in this case.

■ Second, taxpayer has not tendered an affidavit or other acceptable submission containing the specific facts necessary to establish an estoppel claim. Taxpayer's affidavit merely recites in general terms that he was told by someone that "additional parcels that I would acquire would also be under the WOSTOT program." This court has previously held that a "taxpayer claiming estoppel against the state must show 'proof positive' that they were misled by the state. Mere testimony that the government orally misguided taxpayer, is generally, by itself, insufficient to show 'proof positive' that the taxpayer was misled." *Schellin v. Dept. of Rev.*, 15 OTR 126, 131 (2000) (citation omitted). What the taxpayer offered here by affidavit was not even testimony; it was hearsay and, as such, insufficient to support his defense of estoppel for purposes of summary judgment. *Cf.* TCR 47 D (affidavits to "set forth such facts as would be admissible in evidence").

■ Taxpayer next argues that the department should be estopped from collecting WOFPT because Clackamas County levied a property tax on the land, an act, in his view, consistent only with a status for the land as WOFPT qualified. Taxpayer's narrowest use of the estoppel argument is that the levy of property tax led him to believe that his property was WOSTOT qualified and as such subject to property tax but not WOFPT. The problem with that argument is that even land outside the WOSTOT program and subject to WOFPT may be subject to a property tax levy, albeit at a different rate. *See* ORS 321.262 and ORS 321.353.[19] Further, no statute provides for WOSTOT status to be achieved through payment of a property tax. Accordingly, receipt of a property tax bill cannot, in and of itself, be an indication of WOSTOT status or exemption from WOFPT. Taxpayer may have believed differently, but that mistaken belief cannot be a reason to bar taxation. Nor does taxpayer assert that he knew a difference existed between ad valorem rates for WOSTOT and non-WOSTOT property and concluded that the bill he got was consistent with WOSTOT status. Moreover, taxpayer does not assert facts establishing that any governmental official at any time suggested that receipt of a property tax

---

[19] The tax rate for WOSTOT land is higher than for non-WOSTOT land.

bill, in any amount, meant his property was WOSTOT qualified.

More broadly, taxpayer argues that the legislative history of the statutes demonstrate an intent to have either property tax liability for forestland or WOFPT liability for harvest therefrom, but not both. The whole thrust of ORS 321.257 to 321.381, however, is to impose an ad valorem property tax on land *and* a privilege tax on timber harvested from the land. It is true that the statutory provisions on taxation of forestland and the harvest of timber are lengthy and far from simple. But the statutes and this court's discussion in *Irwin v. Dept. or Rev.*, 15 OTR 24 (1999), demonstrate the fallacy of taxpayer's arguments on the relationship of ad valorem tax and WOFPT. The court sees little reason to be forgiving on that point given that the statutory provisions are clear and case law exists on that very point.

Taxpayer next argues that, if he is found to be liable for WOFPT, some or all of the amount he has paid in ad valorem property tax to Clackamas County should be offset against that obligation under the doctrine of equitable recoupment. The amount to be set off presumably would be so much of the property tax paid as exceeded the amount that should have been due on non-WOSTOT land. Taxpayer asserts that such an excess existed but has not quantified it.

Taxpayer has not presented the court with any statutory or Oregon case authority, which would permit him to offset against his WOFPT liability payments made to Clackamas County for property taxes. The court has not been persuaded that the doctrine of equitable recoupment, asserted by taxpayer, is applicable here. But, even if such a doctrine might exist, the court fails to see how equity should or would permit its application here. The fact is that taxpayer is charged with knowledge of the law on WOSTOT status, including the all important, indeed definitive, feature of a certification issued after taxpayer application. Taxpayer may have been mistaken about the need to apply for WOSTOT status, but it was his mistake.[20] Had taxpayer consulted the

---

[20] As stated above, taxpayer has not properly asserted that anyone misled him about a duty to file for WOSTOT status.

statutes, he would have seen that this land could not qualify under WOSTOT absent a certification. With that knowledge taxpayer could then have objected to the tax bill he received if, as he now maintains, it was in excess of what it should have been for non-WOSTOT land.[21]

Finally, in addition to all the other deficiencies in taxpayer's behavior relevant to the WOSTOT program, taxpayer concedes that he harvested the timber in question within five years of purchase. Even if the land in question was otherwise entitled to WOSTOT classification, that act would cause disqualification and expose the harvests to WOFPT. ORS 321.747 provides without qualification that harvest within five years of WOSTOT classification causes timber to be subject to WOFPT.[22]

Taxpayer argues that for purposes of the five-year harvest rule he is entitled to count his first classification of *any* WOSTOT property as the relevant starting date. Taxpayer asserts that the timber harvest in this case occurred more than five years after his first WOSTOT classification of *other* property. Two problems exist with taxpayer's position. First, no statutory or case law supports that legal position; rather, the WOSTOT regime clearly treats separate parcels separately—it does not link times of purchase, times of application for classification, classification decisions, or harvests. That is logical given the fact that classification on each parcel is optional with the owner and qualifying factors may exist for one parcel but not for others subsequently or previously acquired. Second, taxpayer's affidavit only generally suggested prior classifications of parcels under WOSTOT. Taxpayer did not assert in an affidavit that any such classification occurred for a specified parcel more than five years before the harvest at issue here.

Based on the forgoing, the court concludes that the timber taxpayer harvested in 1999 was not subject to WOSTOT and, therefore, was not exempt from WOFPT.

---

[21] In Oregon property owners have a responsibility to audit their liabilities and determine if counties have acted properly. *See Taft Church v. Dept. of Rev.*, 14 OTR 119, 122, *aff'd*, 326 Or 139, 950 P2d 313 (1997).

[22] Classification cannot precede acquisition; therefore, taxpayer's concession on the timing of harvest relative to purchase is a concession that the harvest occurred within five years of any possible classification date.

## C. *Waiver of Penalties Under ORS 305.145*

 Taxpayer, in written submissions as to the department's motion for summary judgment, but not in his pleadings, has requested that this court set aside penalties assessed by the department. Taxpayer cites ORS 305.145 as authority for that request. ORS 305.145, however, authorizes the department, not this court, to waive penalties. *See generally State ex rel D.R. Johnson Lumber Co. v. Dept. of Rev.*, 14 OTR 186, 193 (1997) ("However, as the department points out, the statutes grant it power to compromise and settle cases." (citing ORS 305.145)). That legislative statement on penalty procedures is conclusive because ORS 305.560(1)(a) states the jurisdiction of this court to be exclusive of any challenge to an action of the department as to discretionary fee waiver. This court cannot award penalty relief to taxpayer.

## D. *Motion to Strike*

Taxpayer moved to strike the affidavit of Thomas M. Woods dated November 26, 2003, and two exhibits associated with that affidavit on grounds that those documents were created as the result of an unconstitutional search of the subject property. Taxpayer claims that the search violated several sections of Article I of the Oregon Constitution. Taxpayer also alleged at oral argument on this issue that the search violated the Fourth Amendment to the United States Constitution (Fourth Amendment).

 The department contends that the search does not violate either the Oregon Constitution or the Fourth Amendment because a statute specifically grants the department the authority to "[e]nter upon and inspect the land of any owner of the land from which any timber has been harvested." ORS 321.609(2)(d). The department also contends that the Oregon Supreme Court has previously declared as constitutional discovery orders this court issued pursuant to TCR 36 B(1) allowing for the inspection of a taxpayer's residence. *Poddar v. Dept. of Rev.*, 328 Or 552, 562-63, 983 P2d 527 (1999).

The court need not address the substantive legal issue presented by this motion, however, because the court

has not relied on the information contained in the contested affidavit and exhibits. Those documents relate to the size, age, type, and number of trees harvested by taxpayer from the subject property. The grounds considered here in granting the department's motion for summary judgment do not take that information into account. In conclusion, therefore, the court denies taxpayer's motion to strike as moot.

E. *Attorney Fees*

The department has requested an award of attorney fees under ORS 20.105 on the basis that no reasonable ground exists for asserting the claims in taxpayer's complaint.[23] The department is the prevailing party in this case and, therefore, the court must award attorney fees if the court determines that "there was no objectively reasonable basis for [taxpayer] asserting the claim * * * or ground for appeal." ORS 20.105(1). To determine what constitutes "no objectively reasonable basis," the court agrees with the approach followed by the Oregon Court of Appeals. *See Dimeo v. Gesik*, 195 Or App 362, 98 P2d 397, (2004), *adh'd to as modified*, 197 Or App 560, 106 P3d 697 (2005).

In *Dimeo*, the Oregon Court of Appeals stated that "a party has no objectively reasonable basis for asserting a claim only if the party's position is 'entirely devoid of legal or factual support at the time it was made.' " *Id.* at 371 (quoting *Mattiza v. Foster*, 311 Or 1, 8, 803 P2d 723 (1990)).[24] Moreover, the court stated that the determination "is a function of the substantive law governing the claim." *Id.* at 369. Thus, to determine whether taxpayer has acted in an objectively

---

[23] Although the department also requested attorney fees under ORS 305.437, that statute addresses an award of damages. The department has not specifically asked for an award of damages; thus, the court will not address the applicability of that statute to this case.

[24] As the Court of Appeals noted in a footnote,

"The *Mattiza* court was construing an earlier version of ORS 20.105 when it used the quoted language to describe a 'meritless' position. Nonetheless, this court previously has interpreted the current 'no reasonably objective basis' standard to be synonymous with the 'meritless' standard enunciated in *Mattiza*."

*Dimeo*, 195 Or App at 371 n 8 (citing *Mantia v. Hanson*, 190 Or App 412, 413, 79 P3d 404 (2003), *rev den*, 336 Or 615 (2004)).

unreasonable fashion, this court considers whether tax-payer's claims were entirely devoid of legal or factual support based on the substantive law governing the claims at the time he proceeded in this division.[25]

At the time taxpayer filed the complaint in this division, the taxpayer had already litigated his factual and legal theories in this case in the Magistrate Division. Despite having his case adjudicated in that division, taxpayer persisted with essentially the same legal arguments in this division. The magistrate's reasoning and legal basis addressed the taxpayer's arguments providing the reasoning and authority on which this division also relied. Further, taxpayer's arguments simply have no basis in fact or law. Taxpayer's claims related to whether his complaint for the 1998 tax year was time barred were all inconsistent with statutory provisions and clear and unequivocal prior holdings of this court. This is not a situation where the taxpayer has made an attempt, good faith or otherwise, to persuade this court to overrule former rulings of the court.[26] Rather, taxpayer has merely grasped for an exception to clear statutory requirements.

As to taxpayer's positions on the 1999 tax year, those are also assertions without bases in fact or law. In all cases addressed in this opinion, even a generous reading of the statutes cannot support those positions. In some cases taxpayer's assertions are fundamentally inconsistent with the overall statutory scheme. In other cases, those assertions fly in the face of existing case law without taxpayer providing adequate distinguishing features. Even under the liberal

---

[25] Note that in cases where an award of attorney fees to the department is mandatory under ORS 20.105, the court must determine that the taxpayer has "willfully disobeyed a court order or that there was no objectively reasonable basis for asserting the claim, defense or ground for appeal." That standard is not to be confused with the standard applied in cases in which the court has discretionary authority to award to a prevailing taxpayer reasonable attorney fees. ORS 20.075. Under such a provision, the court must address objective reasonableness in only a specific number of interdependent and nonexclusive factors. ORS 20.075(1). *See also Dept. of Rev. v. Wheeler I*, 18 OTR 129 (2004).

[26] Although the court required the parties to file supplemental writings addressing whether ORS 305.280(3) or ORS 305.270 might have provided taxpayer with an opportunity to properly raise his claims, it was the court, and not the parties—and specifically the taxpayer—that raised those issues. The appropriate fee award, therefore, should not include the time spent that was necessary to address the statute of limitations issue raised by the court.

summary judgment procedures, taxpayer has not made actual factual assertions necessary to support his positions. Finally, taxpayer seeks to avoid several disqualifying facts or conditions, any one of which is fatal to his position and all of which discussed in this opinion are without basis.

Of substantial importance is the fact that the magistrate, in a reasoned decision, previously considered and rejected taxpayer's arguments. This court has rendered a fee award against the department in such a situation. *See Dept. of Rev. v. Wheeler*, 18 OTR 129 (2004). Although the standards for fee awards against a taxpayer under ORS 20.105 differ from those for awards in favor of a taxpayer under ORS 305.490, the court will nonetheless consider the arguments made to a magistrate, the treatment of those in the magistrate's decision, and the nature of the arguments in this division. Under the rationale of *Dimeo*, those considerations are important in determining whether a taxpayer has an objectively reasonable position at the time proceedings in this division are commenced. 195 Or App at 371.

For the foregoing reasons, the court, therefore, concludes that the department is entitled to receive reasonable attorney fees.

## V. CONCLUSION

Based on the foregoing reasons, the court concludes that taxpayer's 1998 tax year complaint is time barred and that taxpayer's timber harvested in 1999 was subject to WOSTOT. The court also concludes that it may not waive penalties assessed by the department under ORS 305.145. Given the bases for the court's decision, the court denies taxpayer's motion to strike as moot. Finally, the court concludes that the department may recover attorney fees because the taxpayer's claims have no objectively reasonable basis under the facts of this case. Now, therefore,

IT IS ORDERED that Defendant's motion for summary judgment is granted;

IT IS FURTHER ORDERED that Plaintiff's motion to strike is denied as moot; and

IT IS FURTHER ORDERED that Defendant is awarded attorney fees.

Costs to Defendant.